UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL ACTION |
| ) | NO. 04-1710-CBS |
| JAMES P. CECERE, ) | |
| Defendant, ) | |

**MEMORANDUM OF PROBABLE CAUSE**
**June 2, 2004**

**SWARTWOOD, M.J.**

I.  Nature of the Offense

On April 6, 2004, a Criminal Complaint was filed charging James P. Cecere ("Mr. Cecere"), with having devised a scheme to defraud and obtain money and property by means of fraudulent pretenses, representations, and promises and in furtherance of that scheme, committing mail fraud and wire fraud, in violation of 18 U.S.C. §§1341 and 1343.

At Mr. Cecere's initial appearance in connection with the offense charged in this Complaint, he was advised of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and was released on conditions.

On May 24, 2004, a probable cause hearing was held and at that hearing, Kevin P. Grady, Special Agent of the Federal Bureau of

Investigation ("FBI"), testified on behalf of the Government and was cross-examined by Mr. Cecere's counsel.

## II.  Findings of Fact

1. On February 26, 2004, Mr. Cecere called Phil Wood, Sales Manager for Wagner Motors, in Boylston, Massachusetts concerning the purchase of a new Jaguar. During this telephone conversation, Mr. Cecere was located in Vermont and Mr. Wood was located in Massachusetts.

2. Mr. Cecere and Mr. wood reached an agreement for the purchase of a particular Jaguar for $67,000. Mr. Wood then faxed to Mr. Cecere, in Vermont, a Business Lease Retail Application and a Co-applicant Personal Credit Information Form (collectively, the "Application").

3. The Application was faxed back to Mr. Wood by Mr. Cecere on or about February 28, 2004 with Abraham Muniz and M.J.G. Interiors, Inc. ("M.J.G.") as co-purchasers. The Application was rejected by Wagner's finance company. After Mr. Wood informed Mr. Cecere that the application had been rejected, Mr. Cecere informed Mr. Wood that he had another co-purchaser.

4. Later, on February 28, 2004, Mr. Cecere faxed to Mr. Wood a joint application for purchase of the Jaguar in the names of M.J.G. and Dennis Schussel of Bronx, New York, as co-purchasers. The price of the Jaguar was $67,000 and Mr. Cecere was to receive $4,900 worth of financing to pay off a remaining balance on a Corvette owned by M.J.G. that had been involved in an accident.

This latter application was accepted by Wagner's finance company. Govt. Ex. 1.

5.  On March 1 and 2, 2004, Mr. Wood had conversations with Mr. Cecere during which Mr. Cecere told Mr. Wood that Dennis Schussel was coming to Vermont to ski at Stratton Mountain on Wednesday, March 3, 2004.  Mr. Wood, because of a previously planned trip, was to be in Vermont on that day and agreed to meet Mr. Cecere and Mr. Schussel at an agreed location in Vermont on the evening of March 3, 2004, to complete the documentation for the sale of the Jaguar.  However, when Mr. Wood met with Mr. Cecere, Mr. Schussel was not present because, as related by Mr. Cecere, Mr. Schussel had been detained on business in New York.  Mr. Wood left the documentation for the Jaguar sale with Mr. Cecere.  Id.

6.  On March 6, 2004, Mr. Wood received the purchase documents for the Jaguar at Wagner Motors in Boylston.  The purchase documents, which were allegedly signed by Mr. Schussel, had been sent via Federal Express by Mr. Cecere.  Subsequently, on March 10, 2004, the Jaguar was delivered to Mr. Cecere in Vermont. Id.

7.  On or about March 17, 2004, Mr. Cecere contacted Wagner Motors, in Shrewsbury, concerning the purchase of a BMW for $75,000.  Id.

8.  Mr. Cecere directed the Wagner BMW Dealership to obtain the necessary credit information from its Jaguar dealership which included the names of Dennis Schussel and Abraham Muniz.  Id.

9. After checking the credit worthiness of Messrs. Schussel and Muniz in connection with the finance application for the BMW, Wagner BMW discovered that Mr. Muniz's credit was insufficient to purchase the BMW. An employee of Wagner BMW called Mr. Cecere and informed him that Mr. Muniz had failed the credit check. Mr. Cecere then informed that employee to use Mr. Schussel's information for the credit application. Id.

10. The General Manager of Wagner BMW became suspicious of this transaction and contacted Mr. Schussel directly and spoke with him over the telephone. Mr. Schussel stated that he had never belonged to, owned, or been a part of M.J.G.; that he had no intention of purchasing a Jaguar; and that he had not appointed or authorized anyone to represent him in the purchase of a new Jaguar or BMW. Id.

11. After a more thorough investigation, law enforcement officials determined that there were approximately five outstanding car loans appearing in Mr. Schussel's credit report for which he had no knowledge, nor had he authorized anyone to obtain such loans. Id.

12. On April 7, 2004, the F.B.I. arranged for a controlled delivery of the BMW by an F.B.I. agent to Mr. Cecere in Vermont. After the BMW was delivered to Mr. Cecere, Mr. Cecere was arrested and after being advised of his Miranda rights, he admitted that he had made arrangements for the purchase of both the Jaguar and the BMW. However, Mr. Cecere stated that he was acting as an agent for

a Mr. Angona and that he was unaware that Mr. Schussel had not authorized these purchases.

13. In 1993, Mr. Cecere had been found guilty of interstate transportation of stolen property, wire fraud and conspiracy for which he was incarcerated for five years in a federal prison. Mr. Angona was serving a federal prison sentence in the same prison as Mr. Cecere.

### III. Probable Cause

Mr. Cecere is charged with mail fraud, in violation of 18 U.S.C. §1341 and wire fraud, in violation of 18 U.S.C. §1343.

Section 1341 provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . ., for the purpose of executing such scheme or artifice or attempting so to do, places in any Post Office or authorized depository for mail matter, any matter of thing whatever to be sent or delivered by the Postal Services, or deposit or causes to be deposited any matter of thing whatever to be sent or delivered by any private or commercial Interstate Carrier, . . . or knowingly causes to be delivered by mail or such carrier according to the direction thereon, ...

Mr. Cecere Fed Ex'd fraudulent documents from Vermont to Wagner Motors in Boylston, Massachusetts for the purpose of purchasing a Jaguar. I find sufficient probable cause that an interstate carrier was used in the scheme to fraudulently obtain an automobile. Mr. Cecere's lawyer argues that the Government has

failed to prove that Mr. Cecere *intended* to devise the scheme to defraud. I will address that argument later in this Order.

Section 1343 provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communications in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice...

Mr. Cecere, while in Vermont, faxed to Wagner Motors in Boylston, Massachusetts, a fraudulent application and other related documents in furtherance of a fraudulent scheme to obtain a Jaguar. Mr. Cecere also used the telephone in furtherance of a fraudulent scheme to obtain a Jaguar and a BMW from Wagner Motors in Boylston and Shrewsbury, Massachusetts. Mr. Cecere's counsel argues that the Government has failed to produce any evidence that Mr. Cecere *intended* to devise a scheme to defraud Wagner Motors in fraudulently purchasing the Jaguar and BMW. I will now address Mr. Cecere's counsel's argument that the Government has failed to establish that there exists probable cause to believe that Mr. Cecere intended to defraud Wagner Motors.

Mr. Cecere's counsel asserts that the evidence establishes no more than that Mr. Cecere was acting on instructions from Mr. Angona, who represented to him that he was authorized to have Mr. Cecere pursue the purchase of these automobiles on behalf of M.J.G.

Interiors, Inc. and Mr. Schussel. Admittedly, there is no direct evidence that Mr. Cecere intended to defraud Wagner Motors. However, there is substantial circumstantial evidence that Mr. Cecere knew that he was participating in a fraudulent scheme to purchase these automobiles. The following facts support this conclusion:

  1. Mr. Cecere has previously been convicted of transportation of stolen property, wire fraud and conspiracy;

  2. Mr. Cecere served a prison sentence for the above offenses in the same prison where Mr. Angona was incarcerated;

  3. Mr. Cecere assured Mr. Wood that he and Mr. Schussel would meet Mr. Wood in Vermont in order to finalize the documentation for the purchase of the Jaguar. However, when Mr. Wood arrived at the meeting, Mr. Cecere claimed that Mr. Schussel was unable to attend because he had to work;

  4. At the time that Mr. Cecere was arrested, he was driving an automobile that had previously been purchased under circumstances similar to the purchase of the Jaguar and BMW. Mr. Cecere claimed that he was supposed to have delivered that vehicle to M.J.G., but kept it an extra week in order to get it serviced; and

  5. The alleged applicants for the purchase of the Jaguar and BMW were located in New York and yet the arrangements for the purchase of these automobiles and the delivery of these automobiles were made by Mr. Cecere in Vermont.

Therefore, considering the totality of the facts presented by the Government in this case, I find that there is probable cause for concluding that Mr. Cecere intended to fraudulently purchase, in interstate commerce, a Jaguar and BMW and that he accomplished this scheme through the use of an interstate carrier and the telephone. Furthermore, even if such evidence were insufficient to support a direct finding that Mr. Cecere had the necessary intent to defraud, there clearly exists probable cause to support a finding of willful blindness, that is, that Mr. Cecere consciously chose to remain ignorant as to the fraudulent nature of the purchases he made at the request of his former prison associate, Mr. Angona.

For the reasons set forth above, I find probable cause for the offenses charged against Mr. Cecere in this Complaint.

/s/ Charles B. Swartwood
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE
